**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARCO VERCH,<br><br>Plaintiff,<br><br>v.<br><br>ADVOCATE SHERMAN HOSPITAL dba THE PERK AND INSPIRE BOUTIQUE AND GIFTS,<br><br>Defendant. | Case No. 1:26-cv-04693<br><br>Hon. Sunil R. Harjani |

**DEFENDANT ADVOCATE SHERMAN HOSPITAL'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER RULE 12(b)(6)**

Defendant ADVOCATE SHERMAN HOSPITAL dba THE PERK AND INSPIRE BOUTIQUE AND GIFTS ("Advocate" or "Defendant") submits this Reply in support of its Motion to Dismiss Under Rule 12(b)(6). In his Opposition to the Motion (the "Opposition" or "Resp."), Plaintiff MARCO VERCH ("Verch" or "Plaintiff") fails to rebut Defendant's arguments for dismissal. Because no amendment can cure the Complaint's defects, dismissal should be with prejudice. Defendant respectfully shows as follows:

## I.
## INTRODUCTION

The fundamental issues in this case are simple. Verch offered a photograph to the world under a permissive Creative Commons 2.0 license that expressly allows anyone to copy, redistribute, remix, and build upon the Work "for any purpose, even commercially." (cited in Dkt. 1, Compl. at ¶ 15, n.1). A hospital gift shop employee did exactly that, by creating and posting a single flier for a one-day holiday sale. Years later, Verch sued for copyright infringement, claiming "willful" infringement and "irreparable harm." He also made two DMCA claims: (1)

removal of copyright management information ("CMI"), despite not showing any such CMI on the Work depicted in the Complaint, and (2) addition of false CMI by virtue of Advocate's inclusion of informational and design elements on the flier.

Verch's Opposition does not cure the Complaint's deficiencies identified in Advocate's Motion to Dismiss. Instead, it relies on reiterations of the Complaint's bare conclusions, and a misapplication of the burden framework at the 12(b)(6) stage.

The Opposition's insistence that the Creative Commons 2.0 license is a "conditional offer" that Advocate never accepted ignores the Complaint's own admissions and further underscores that this is not a copyright infringement issue given the existence of a worldwide nonexclusive license. Verch also sidesteps the fatal deficiencies in the DMCA claims by repeating his position on the definition of CMI, but once again ignoring the crucial *intent* element required by the statute.

Verch continues to disguise a license dispute as a copyright infringement claim and fails to meet statutory requirements for the two DMCA claims. In short, Verch's Complaint was conclusory and internally contradictory, and he maintains this same pattern in his Opposition. Because these defects arise from Verch's own admissions and from the Work itself, no amendment can cure them, and dismissal should be with prejudice.

## II.
## ARGUMENT AND AUTHORITIES

### 1. THE COMPLAINT FAILS TO STATE A CLAIM FOR REMOVAL OF CMI UNDER § 1202(b) (COUNT II).

#### a. The Alleged CMI Was Not "Conveyed in Connection With" the Work.

Verch argues in his Opposition that the CMI appeared "next to the Work" on the CCNULL page, supposedly distinguishing *Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975

F. Supp. 2d 920 (N.D. Ill. 2013). (Dkt. 24, Resp. at 5). This distinction fails and contradicts the Work depicted in the Complaint itself.

*Personal Keepsakes* is directly on point, even accepting Verch's reference to the German website where the Work appears. A court in this District held that a copyright notice on the website hosting the works was not "conveyed in connection with" the works at issue. 975 F. Supp. 2d at 928–29 (noting that Section 1202(b) "'applies only to the removal of copyright management information on a plaintiff's product or original work' — in other words, not simply printed somewhere on the website" (quoting *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999) *aff'd in part, rev'd in part and remanded*, 280 F.3d 934 (9th Cir. 2002) *opinion withdrawn and superseded on denial of reh'g*, 336 F.3d 811 (9th Cir. 2003) *and aff'd in part, rev'd in part and remanded*, 336 F.3d 811 (9th Cir. 2003) (additional internal citations omitted)); *see also Fischer v. Forrest*, 286 F. Supp. 3d 590, 608 (S.D.N.Y. 2018), *aff'd*, 968 F.3d 216 (2d Cir. 2020) (stating that CMI "must be attached to, depicted in, or broadly 'conveyed in connection' with" the copyrighted work). Verch's attempt to distinguish *Personal Keepsakes* by asserting that his CMI was "next to" the Work on the same page merely describes the exact scenario *Personal Keepsakes* addressed, of information on a hosting website of the work. In that case, this disconnect from the works to the CMI was insurmountable.

The alleged CMI appearing "next to" the Work on one third-party German photo-sharing website is not "conveyed in connection with" the Work itself as required by § 1202(c). The Work, as depicted in the Complaint, is a simple photograph containing no text, attribution details, or CMI of any kind. (Compl. at ¶ 10). CMI on a foreign webpage was not *on* or embedded *in* the photograph file as contemplated in the statute and case law, despite Verch's effort to minimize this distance.

**b. The Complaint Does Not Allege an Affirmative Act of Removal.**

Section 1202(b) prohibits the intentional "removal or alteration" of CMI, which is an affirmative act. 17 U.S.C. § 1202(b). The Complaint alleges only that Advocate displayed the Work "without any of the Attributions." (Compl. at ¶ 43 and Resp. at 6). But displaying a work without attribution is not equivalent to actively *removing* attribution. Neither the Complaint nor the Opposition ever allege that Advocate accessed the CCNULL page, saw the CMI, copied the image from that page, or *removed* the CMI. *See Kelly*, 77 F. Supp. 2d at 1122 (§ 1202(b) "applies only to the *removal* of copyright management information on a plaintiff's product or original work" (emphasis added)). This is not "demanding evidence at the pleading stage," as Verch suggests through his reliance on *Southall v. Force Partners, LLC*, No. 1:20-cv-03223, 2021 WL 3883082, at *5 (N.D. Ill. Aug. 31, 2021). Rather, it is emphasizing that Verch's Complaint is devoid of the requisite factual support and rests on legal conclusions.

Here, Verch's own allegations demonstrate that Advocate did not "remove" CMI. Verch alleges both that CMI existed on the CCNULL page (Compl. at ¶ 16) and that Advocate displayed the Work "without" that CMI (Compl. at ¶ 43), but nowhere alleges the affirmative act connecting these two facts: that Advocate accessed the CCNULL page and stripped the CMI from it. Two disconnected allegations do not add up to a removal. Indeed, the Complaint itself equates the alleged removal with a mere omission, asserting that Advocate "failed to provide attribution as required by the CC 2.0 license" and that this "failure to attribute is a violation of 17 U.S.C. § 1202(b) as removal of CMI." (Compl. at ¶¶ 27–28). A failure to attribute is, at most, a license-compliance issue; it is not the affirmative act of removal the statute requires. The absence of facts supporting the act of removal is fatal.

**c. The Double Scienter Statutory Requirement Is Unmet.**

Similarly, Section 1202(b) requires a plaintiff to plead a "double scienter": (1) that the defendant is *aware* that the CMI was removed or altered; and (2) that the defendant *knew* or had *reasonable grounds to know* the removal would induce, enable, facilitate, or conceal infringement. *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 377–78 (S.D.N.Y. 2019), *aff'd*, 970 F.3d 167 (2d Cir. 2020). The Complaint pleads no facts that Advocate ever accessed the CCNULL page, saw the alleged CMI, or knew it existed. Without these threshold facts, Advocate could not have formed the requisite intent. *See Chevrestt v. Am. Media, Inc.*, 204 F. Supp. 3d 629, 631–32 (S.D.N.Y. 2016) (granting motion to dismiss on a CMI claim when intent was not properly alleged); *Thron v. HarperCollins Publishers, Inc.*, No. 01-CIV-5437(JSR), 2002 WL 1733640, at *1 (S.D.N.Y. July 26, 2002) (granting summary judgment where plaintiff failed to provide a basis for finding defendants acted "intentionally"). And to the extent Verch proceeds on a distribution theory under § 1202(b)(3), as his reliance on *Mango* suggests (Resp. at 6), that provision requires "actual knowledge" that CMI has been removed or altered without authority. *Mango*, 970 F.3d at 171; *Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*, 345 F.3d 922, 926–27 (6th Cir. 2003). The Complaint pleads no facts supporting such knowledge.

Verch characterizes Advocate's factual arguments as a "competing account" that cannot be resolved at the pleading stage. (Resp. at p. 6). But Advocate is not asking the Court to accept competing *facts*. It is asking the Court to recognize the *absence* of any factual allegations supporting the required scienter. That is precisely what Rule 12(b)(6) requires.

**2. THE COMPLAINT FAILS TO STATE A CLAIM FOR FALSE CMI UNDER § 1202(a) (COUNT III).**

**a. The Words "Inspire Boutique" Are Not CMI as a Matter of Law.**

Verch argues that whether "Inspire Boutique" constitutes false CMI is a "factual contention which cannot be decided on a motion to dismiss." (Resp. at 7). It is not. Whether particular text qualifies as CMI under § 1202(c) is a question of statutory interpretation that courts resolve as a matter of law. *Fischer*, 286 F. Supp. 3d at 611 (stating that a name used as a product descriptor in an advertisement "has no CMI relevance" and "neither informs the reader" about authorship or copyright ownership).

"Inspire Boutique" is Advocate's gift shop name, placed on a flier advertising a one-day sale alongside promotional text regarding sale discounts for the Holiday Open House event. It is an advertising design element, not a copyright ownership claim. No reasonable viewer would understand a hospital gift shop's name on a sale flier as a claim of photographic authorship over a stock background image, just like the advertising text in *Fischer*. Because "Inspire Boutique" is not CMI, it cannot be false CMI, and the § 1202(a) analysis ends there.

**b. The Intent Element Is Fatally Unsupported.**

Even assuming *arguendo* that the inclusion of the terms "Inspire Boutique" qualified as CMI (which it does not), the Complaint pleads no facts that Advocate placed the name "*knowingly* and with the *intent* to induce, enable, facilitate, or conceal infringement." 17 U.S.C. § 1202(a) (emphasis added). Using an openly licensed image and adding one's own business name to the resulting flier is ordinary commercial behavior; it does not support an inference of intent to conceal infringement.

The Complaint merely parrots the statutory language that Advocate "distributed copies" with alleged false CMI while "knowing or having reasonable grounds to know that it would induce, enable, facilitate, or conceal infringement" without further support. (Compl. at ¶¶ 51–54). This is precisely the type of "formulaic recitation of the elements of a cause of action" that *Iqbal* and *Twombly* prohibit. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In *Chevrestt*, the court dismissed a CMI claim in which the complaint's speculative conclusions were not supported by a "showing that [defendant] was confronted or otherwise made aware of its allegedly infringing action." 204 F. Supp. 3d at 632. This Court is faced with an analogous unsupported conclusion as to intent. Verch's reliance on *Leveyfilm, Inc. v. Fox Sports Interactive Media*, *LLC*, 999 F. Supp. 2d 1098, 1103 (N.D. Ill. 2014), is misplaced. As Verch himself describes it, *Leveyfilm* involved photographs published with the defendant's name attached after the plaintiff's name was removed. (Resp. at 7). Here, by contrast, Verch's name never appeared on the Work at all. (Compl. at ¶ 10).

Under *Iqbal* and *Twombly*, the Court should not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

### 3. THE COMPLAINT FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT (COUNT I).

Count I rests on the infringement of exclusive rights conferred by 17 U.S.C. § 106. But a licensee does not infringe those rights by doing what the license permits, and the Complaint itself establishes the nonexclusive license.

#### a. The Creative Commons License Authorized Advocate's Use.

Verch's Opposition attempts to reframe the Complaint's admission that the Work was "offered" under the CC 2.0 license into something less than a license grant, asserting "[t]hat is not

what the complaint alleges." (Resp. at 4). This is a distinction without a difference. The CC 2.0 license's plain terms, which are cited and hyperlinked in the Complaint itself, grant a nonexclusive license allowing any member of the public, including Advocate, to "copy and redistribute" and "remix, transform, and build upon" the Work "for any purpose, even commercially." (Compl. at ¶ 15, n.1 and Dkt. 20-1, Stahl Decl. at ¶ 2, Ex. 1). Those are precisely the acts the Complaint alleges Advocate performed.

The Complaint simultaneously alleges Advocate "has never been licensed to use the Work for any purpose." (Compl. at ¶ 19). Both cannot be true at the same time. This internal contradiction is precisely the type of conclusory allegation *Iqbal* and *Twombly* prohibit. *Twombly*, 550 U.S. at 555. The Court need not accept a legal conclusion of copyright infringement that contradicts the Complaint's own factual allegations of a license grant. *Iqbal*, 556 U.S. at 678.

**b. Verch's "Conditional License" Theory Does Not Save Count I.**

Verch relies on *Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008), for the proposition that failure to comply with Creative Commons license conditions means Advocate "never accepted the conditional offer" of the license and thus committed infringement. (Resp. at 2). However, the Seventh Circuit has held that a nonexclusive license is an affirmative defense to a claim of copyright infringement. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996). Where, as here, the Complaint itself pleads the license (Compl. at ¶¶ 13–15), that defense is established on the face of the pleading. *See* Section 4, *infra*. Verch's Opposition does not cite, distinguish, or even acknowledge this controlling authority regarding licenses. Nor does the Complaint allege that the license was ever terminated or revoked before Advocate's use. And bare allegations of exceeding a license's scope are insufficient under Rules 8(a)(2) and 12(b)(6). *Marvullo v. Gruner & Jahr*,

105 F. Supp. 2d 225, 230–31 (S.D.N.Y. 2000) (granting a motion to dismiss where the unsupported "beyond the scope" of a license allegation was a legal conclusion).

**4. THE LICENSE DEFENSE IS PROPERLY BEFORE THE COURT BECAUSE THE COMPLAINT ITSELF ESTABLISHES IT.**

Verch argues in his Legal Standard section that a license is an affirmative defense and that he need not plead around it, citing *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004), and *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). But Verch's own authorities confirm the rule that defeats him: dismissal on an affirmative defense is proper when the complaint itself "unambiguously establish[es] all the elements of the defense." *Hyson*, 821 F.3d at 939 (internal citations omitted); *see also Xechem*, 372 F.3d at 901 (confirming that a plaintiff "pleads itself out of court" and can be dismissed on a 12(b)(6) motion if it admits all defense elements in its complaint).

That is precisely what happened here. The Complaint *admits* that Verch "offered usage rights to the public through the Creative Commons 2.0 License." (Compl. at ¶ 13). It cites the license's URL in a footnote, demonstrating the Work was freely offered online. (Compl. at ¶ 15, n.1). This raises the license defense in its entirety.

Verch contends that Advocate must prove the license "by a preponderance of the evidence," citing *Hull v. Bd. of Trs. of Univ. of Ill. at Chi.*, No. 98 C 6199, 2001 WL 81144, at *5 (N.D. Ill. July 16, 2001) (Resp. at p. 3). That standard applies at trial, not on a motion to dismiss. Further, he relies on *Kay Bros. Enters. v. Parente*, No. 16 C 387, 2018 WL 3630155 (N.D. Ill. July 31, 2018) to place the burden on Advocate to prove the existence of a license. (Resp. at 3). *Proving* a license is not necessary in this case, as the Complaint itself admits the existence of an open license. The question here is whether the Complaint's own allegations render Verch's infringement claim implausible due to the existence of an open license. They do.

## 5. LEAVE TO AMEND SHOULD BE DENIED BECAUSE AMENDMENT WOULD BE FUTILE.

Verch's Opposition closes with a single sentence requesting, in the alternative, that he "should be allowed leave to ament [*sic*]." (Resp. at 8). He submits no proposed amended complaint, identifies no additional facts he could plead, and offers no explanation of how any amendment would cure the deficiencies identified in Advocate's Motion. Although leave to amend is ordinarily freely given, a court may deny leave where amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015). "Leave to amend, though usually freely given, may be properly denied where the proposed amendment would be legally insufficient on its face or would fail to state a claim." *Marvullo*, 105 F. Supp. 2d at 228 (internal citation omitted). Even under the Seventh Circuit's generous approach to amendment, dismissal with prejudice is proper where "it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) (internal citation omitted).

That standard is met here. Each defect in the Complaint flows not from inartful drafting, but from fixed facts that Verch has already alleged and cannot retract: the content of the Work itself, the public license he granted, and the absence of any facts concerning Advocate's state of mind. Verch has had the benefit of Advocate's Motion, which identified each of these deficiencies, yet his Opposition points to no fact he could add to cure them.

### a. No Amendment Can Add Attribution Language to the Work Itself.

The Work is what it is. As depicted in the Complaint, it is a simple photograph of a wooden background and evergreen branches that contains no text, notice, name, or CMI of any kind. (Compl. at ¶ 10). Verch's own Count II confirms that the alleged CMI existed "in the form of Attributions on the CCNULL Page," not in the photograph. (Compl. at ¶ 42). No amended pleading

can change the content of the Work or retroactively embed attribution information in it. Because "[a]n action for removal of copyright management information requires the information to be removed from a plaintiff's product or original work," *Fischer*, 286 F. Supp. 3d at 608–09 (internal citation omitted), and § 1202(b) "applies only to the removal of copyright management information on a plaintiff's product or original work," *Kelly*, 77 F. Supp. 2d at 1122, any amended Count II would fail for the same reason the current one does. Nor may Verch now allege that the Work contained CMI. Where a "plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss ... [and] directly contradicts the facts set forth in his original complaint," a court is authorized "to accept the facts described in the original complaint as true." *Fischer*, 286 F. Supp. 3d at 605 n.6 (quoting *Colliton v. Cravath, Swaine & Moore LLP*, No. 08 CIV 0400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) (additional internal citations omitted)).

**b. Verch's License Admissions Cannot Be Pleaded Away.**

Verch affirmatively alleges that "[a]t the time he published the Work on the CCNULL Page and at all times thereafter, Verch offered usage rights to the public through the Creative Commons 2.0 License." (Compl. at ¶ 13). He cites and links the license itself. (Compl. at ¶ 15, n.1). That license permits any member of the public to "copy and redistribute the material in any medium or format for any purpose, even commercially," and to "remix, transform, and build upon the material for any purpose, even commercially." (Stahl Decl. at ¶ 2, Ex. 1). These are binding admissions about the terms on which Verch chose to release the Work to the world, and no amended pleading can retract them without directly contradicting the original Complaint. *See Fischer*, 286 F. Supp. 3d at 605 n.6. An infringement claim is "legally insufficient because it is contradicted by plaintiff's allegation that he licensed defendant's use of the photograph." *Marvullo*, 105 F. Supp. 2d at 233–

34. The public license likewise forecloses any amended DMCA claim: where a defendant uses a work under a license, "no Defendant could be said to have removed copyright management information knowing or having reasonable grounds to know that that removal would induce, enable, facilitate, or conceal an infringement of federal copyright laws." *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13-cv-496, 2015 WL 5601853, at *6 (D. Haw. Sept. 23, 2015); *see also Gordon*, 345 F.3d at 926–27 (affirming a grant of summary judgment when there were no reasonable grounds to know of infringement where defendant's personnel "believed that the poster had been cleared for use in television commercials").

**c. Advocate's Intent Cannot Be Rewritten Through Amendment.**

Both DMCA counts require a culpable mental state. Section 1202(b) requires intentional removal together with knowledge or reasonable grounds to know that the removal will induce, enable, facilitate, or conceal infringement, and § 1202(a) requires that the defendant act "knowingly and with the intent to induce, enable, facilitate, or conceal infringement." 17 U.S.C. § 1202(a)–(b). Verch has no facts about the state of mind of a hospital gift shop employee who created a single holiday sale flier, and his Opposition identifies none. Any amended allegations of intent would necessarily be made "upon information and belief," the very type of allegations the *Chevrestt* court rejected as unsupported "conclusions (speculations?)" lacking any "showing that [defendant] was confronted or otherwise made aware of its allegedly infringing action." 204 F. Supp. 3d at 632. Nor can Verch rely on Rule 9(b) to allege intent generally: "Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8." *Iqbal*, 556 U.S. at 686–87. Factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Verch's own timeline further forecloses any inference of contemporaneous intent. He alleges that he discovered the Facebook post in March 2024, yet did not notify Advocate of his claims until September 2025. (Compl. at ¶¶ 21, 32). Knowledge Advocate may have acquired from Verch's later notice cannot be bootstrapped backward to supply the intent required when the flier was created and posted. And although the *Chevrestt* court permitted repleading, Verch here has already had the benefit of Advocate's Motion identifying precisely this deficiency, and he still points to no fact he could add. 204 F. Supp. 3d at 632.

**d. Labeling a Shop Name on a Flier as "CMI" Is a Legal Conclusion.**

Count III rests on the bare assertion that placing "Inspire Boutique" on the flier constitutes "false CMI." (Compl. at ¶¶ 50–51). Whether text qualifies as CMI is a question of law governed by the statutory definition in § 1202(c), and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Repleading the same flier with different labels cannot change what it depicts: a gift shop's name on a one-day sale advertisement, alongside promotional sale text. A name used in that manner "has no CMI relevance" and "neither informs the reader" about authorship or ownership of the underlying work. *Fischer*, 286 F. Supp. 3d at 611. Because the flier itself is fixed and already before the Court (Compl. at ¶ 51), no amendment can transform a store name into a statement of photographic authorship or copyright ownership.

Because each defect arises from facts Verch has already alleged, or from facts he cannot in good faith allege, amendment would be futile. The Court should dismiss the Complaint with prejudice and deny Verch's undeveloped request for leave to amend.

## III.
## CONCLUSION

WHEREFORE, for the reasons set forth above, Defendant ADVOCATE SHERMAN HOSPITAL dba THE PERK AND INSPIRE BOUTIQUE AND GIFTS respectfully requests that the Court dismiss Plaintiff's claims against it with prejudice, deny Plaintiff's request for leave to amend, and award all other relief, at law or in equity, to which it may be justly entitled.

Dated this 7th day of October, 2026.

*/s/ Christian G. Stahl*
Mark W. Bina, ARDC 6288024
mark.bina@quarles.com
Christian G. Stahl, ARDC 6290825
christian.stahl@quarles.com
QUARLES & BRADY LLP
155 N. Wacker Drive
Suite 3200
Chicago, Illinois, 60606
Tel.: (312) 715-5000

***Attorneys for Defendant***
***ADVOCATE SHERMAN HOSPITAL***